Commonwealth *v.* Wilson, Appellant.

Submitted November 8, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Edward J. Ross,* and *Zarwin, Baum, Arangio and Somerson,* for appellant.

*Maxine J. Stotland* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 16, 1973:

On April 30, 1957, James Charles Wilson (appellant), and co-defendant Edward Dennis were brought to trial in the Court of Common Pleas of Philadelphia,

having been charged with a series of rapes and related offenses, including robbery and assault. Appellant was also charged with burglary and loitering arising out of a separate incident. Both defendants pled guilty to bills of indictment Nos. 428-31 and 434, and went to trial on a waiver of jury trial on Bills Nos. 432, 433 and 435. Appellant also pled not guilty to the separate bills on which he alone was charged. After hearing the evidence on bill No. 432, forcible rape and the subject of this appeal, the lower court sustained defense counsel's demurrer as to Dennis and found appellant guilty. Two consecutive sentences of five to ten years were imposed on bills Nos. 428 and 431. Appellant received an additional two to four year sentence on bill No. 432 and was thus sentenced to imprisonment for a total of twelve to twenty-four years. Sentence was suspended on the other bills. No post-trial motions were filed.

Pursuant to the Post Conviction Hearing Act[1] appellant, on February 23, 1967, filed a petition for post-conviction relief alleging a number of errors concerning both the cases in which he pled guilty and the rape case (bill No. 432) in which he was found guilty by the trial court. After an evidentiary hearing the petition was granted only to permit filing of post-trial motions nunc pro tunc on bill No. 432.[2] On February 5, 1970, the motions for new trial and in arrest of judgment were denied. The Superior Court affirmed per curiam without opinion. *Com. v. Wilson*, 217 Pa. Superior Ct. 853, 270 A. 2d 408 (1970). We granted allocatur.

The facts that gave rise to appellant's prosecution on bill No. 432 are as follows: On February 24, 1957,

---

[1] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 *et seq.* (Supp. 1972).

[2] This order was affirmed per curiam without opinion by the Superior Court. *Commonwealth v. Wilson*, 216 Pa. Superior Ct. 745, 258 A. 2d 335 (1969). We denied allocatur.

at 11:45 p.m., Margaret Reiser, prosecutrix, was raped while returning home from work. She had just gotten off a trolley and begun to walk toward her home when a car passed and then stopped a few feet in front of her. The next thing she knew a "tall man," standing in front of her, asked her for directions to somewhere and then told her not to scream or he would knife her. Not drawing a knife but having poked her in the side with something, he grabbed her bag, twisted her neck and pushed her into the front of the car. She then passed out. When she regained consciousness she was on her knees on the floor in the back of the car; the "tall man," having wrapped his leg around her back, was squeezing her neck with one of his hands. The man in the front seat, described only as a "short man," was driving the car. They stopped the car and sexually assaulted her in the automobile and then drove around the block and shoved her out of the car. She reported the rape to a friend and was taken to the police station. When questioned by the police, she could only describe the man who raped her as a "tall man."

Appellant was arrested on March 28, 1957. Miss Reiser identified appellant only, in a two-man lineup consisting of appellant and his co-defendant. Although she viewed a number of people at the police station, she was told by the police immediately before viewing appellant and his co-defendant, that these two men had committed similar acts upon other women. At trial, the prosecutrix, when asked on direct examination if the man who raped her was in the courtroom, pointed to appellant. On cross-examination the prior lineup procedure was elicited from the prosecutrix.

The question presented is whether an illegal pretrial confrontation tainted Miss Reiser's in-court identification of appellant. Since the challenged pretrial confrontation occurred before *United States v. Wade,*

388 U.S. 218 (1967), and *Gilbert v. California,* 388 U.S. 263 (1967), the holdings in those cases that the presence of counsel is required at pretrial confrontations do not apply. However, due process has always required fairness in the conduct of pretrial identification procedure. *Stovall v. Denno,* 388 U.S. 293, 301 (1967) ; *Com. v. Williams,* 440 Pa. 400, 404, 270 A. 2d 226, 228 (1970). In pre-*Wade* and *Gilbert* cases the test of the validity of the pretrial confrontation is whether, considering the totality of the surrounding circumstances, the confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he [the appellant] was denied due process of law." 388 U.S. at 302; *Commonwealth v. White,* 447 Pa. 331, 342, 290 A. 2d 246, 252 (1972).

We have no difficulty concluding that, in view of the circumstances surrounding the pretrial confrontation, appellant was denied due process of law. Although this case is governed by the pre-*Wade* and *Gilbert* standard, the United States Supreme Court's observations in *Wade* are most relevant. There the Court recognized that a major factor contributing to mistaken identification has been the degree of suggestion inherent in the prosecution's manner of presenting the suspect to witnesses for pretrial identification. 388 U.S. at 228. The Court further remarked that the impediments to an objective observation are increased when the prosecution is for rape and the victim is the witness. The particular hazard presented is that the victim's understandable outrage may excite vengeful or spiteful motives. *Id.* at 230. Noting that lineups are most often used to crystallize an eyewitness' identification of the accused for future reference, the Court specifically condemned various "suggestive procedures." Among those condemned were telling the witness that they have caught the culprit, after which the accused

is brought before the witness alone or viewed in jail, and pointing out the suspect before or during a lineup. *Id.* at 233, 240. Certainly the pretrial confrontation between the rape victim, Miss Reiser, and appellant was equally as suggestive.

In addition, it was unnecessary for the police to conduct a two-man lineup. Having shown Miss Reiser a number of men before showing her only the appellant and the co-defendant they could have only intended to single out these suspects as her assailants. The Commonwealth fails to offer any justification for this procedure. The surrounding circumstances were hardly as compelling as those which were found to justify the one-man lineup in *Stovall,* where the witness was hospitalized and no one knew how long she would live. *See Simmons v. United States,* 390 U.S. 377, 384-85 (1968). Finally, due to the extremely weak description that Miss Reiser gave the police immediately following the rape there was a strong possibility that the procedure utilized would lead to a misidentification. *Id., see Palmer v. Peyton,* 359 F. 2d 199, 201 (1966).

The Commonwealth contends that, even if the pretrial confrontation was invalid, the in-court identification was based upon observations of the appellant independent of the impermissible lineup and therefore not tainted. In *Wade,* the Court stated that the following factors should be considered in determining whether the Commonwealth has established by clear and convincing evidence that the in-court identification had an independent source: ". . . the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the

lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." *United States v. Wade*, 388 U.S. at 241.

Having reviewed the record with these considerations in mind, we note: (1) except for the pretrial lineup, Miss Reiser only observed the man identified as appellant for a few moments on a dark street; (2) she was only able to describe him as a "tall man;" and (3) there was more than a four-week interval between the alleged act and the lineup. Furthermore, on cross-examination she was unable to say whether she would be able to recognize appellant on the street or in a group of men. Even though Miss Reiser's in-court identification was unequivocal, we are not convinced that it was based upon an observation of the appellant independent of the impermissible lineup.

Order of the Superior Court is reversed, the judgment of sentence is vacated and a new trial is granted.

Mr. Justice MANDERINO concurs in the result.