Commonwealth *v.* Lopez, Appellant.

Argued November 20, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

354

reargument refused May 6, 1974.

*Leonard J. Gajewski,* for appellant.

*Grant E. Wesner,* Deputy District Attorney, with him *James R. Hevalow,* Assistant District Attorney, and *Robert L. VanHoove,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, March 25, 1974:

During the late evening of March 6, 1971, Ramon C. Santiago was shot in the hallway of his apartment in Reading, Pennsylvania. Witnesses heard gunshots and saw a man run from the building and drive away in a black 1959 Chevrolet occupied by one or more persons. Police were called, and the body of Santiago was found. A radio broadcast describing the getaway car was immediately issued, and approximately one hour later, two Reading police officers spotted such a vehicle. They followed and stopped the car and requested the driver, Lopez, to produce identification, either owner's or operator's cards, which he could not do.[1] Appellant was taken to the police station and given the *Miranda* warn-

---

[1] Coincidentally, Lopez had already been considered a suspect in the shooting by reason of prior difficulties known to the police between the decedent and himself.

ings in Spanish through the regular police interpreter. After waiving counsel, he was interrogated in Spanish again through the interpreter in regard to the Santiago shooting. No formal charges had been lodged.

After first denying any knowledge of the shooting, appellant orally confessed in English to a police detective while out of the interpreter's presence for a few minutes. He subsequently repeated the confession in Spanish to the interpreter who took notes in Spanish and translated them into English, from which an English statement was prepared. The interpreter translated and explained the typed statement to appellant, who then signed it. Appellant was thereafter charged with murder, tried by jury in the Court of Common Pleas of Berks County on September 24, 1971, found guilty of second-degree murder and sentenced to a term of 8 to 20 years. A pretrial motion to suppress the oral statement had been denied on June 2, 1971, as were post-trial motions in arrest of judgment and for a new trial. On appeal, we now affirm.

Appellant raises no less than twelve allegations of error in the proceedings of the trial court. Initially, he contends that his warrantless arrest was illegal as not based upon probable cause and that it therefore tainted the subsequent oral and written statements. In the suppression petition, appellant did not raise the illegality of his arrest. Not until post-trial motions was the issue raised, and the trial court properly concluded that this basis for suppression had been waived, relying upon Rule 323 of the Pennsylvania Rules of Criminal Procedure[2] and *Commonwealth v. Turra*, 442

---

[2] Rule 323(b) provides: "Unless the opportunity did not previously exist, or the interests of justice otherwise require, such application [to suppress] shall be made only after a case has been returned to court and not later than ten days before the beginning of the trial session in which the case is listed for trial, except that in any judicial district having continuous trial sessions said appli-

Pa. 192, 275 A. 2d 96 (1971). There are no circumstances in this case that would mandate a different result.[3]

Appellant next alleges that he was unable to intelligently and voluntarily waive counsel because he had not been informed of the exact nature of the crime for which he was being investigated. It is well-settled law in this Commonwealth that a defendant is sufficiently alerted to the possibility of involvement in a criminal homicide case once he is aware that the victim's death is under investigation. *Commonwealth v. McIntyre,* 451 Pa. 42, 301 A. 2d 832 (1973); *Commonwealth v. Boykin,* 450 Pa. 25, 298 A. 2d 258 (1972); *Commonwealth v. Jacobs,* 445 Pa. 364, 284 A. 2d 717 (1971); *Commonwealth v. Cooper,* 444 Pa. 122, 278 A. 2d 895 (1971). Both the detective who received the first oral confession and the police interpreter testified that appellant had been told in Spanish upon arrival at the police station that he would be questioned about "Santiago's shooting" and "about the murder," and that appellant was aware of his status as a suspect. The judge at the suppression hearing found that Lopez had been aware of the crime under investigation, and in view of

---

cation shall be filed not later than ten days before the day the case is listed for trial. If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived."

Rule 323(d) provides: "The application shall state specifically the evidence sought to be suppressed, the specific constitutional grounds rendering the evidence inadmissible, and shall state with particularity the facts and events in support thereof."

[3] Appellant argued that it was error to admit testimony at trial pertaining to the black 1959 Chevrolet, and that all testimony pertaining to the car in which he was apprehended should be stricken. The trial judge properly refused the request to strike, since the propriety of the arrest, to which such testimony went, could not be contested at trial.

the evidence before him, we cannot find error in this determination.

A third contention of the appellant is that there was insufficient proof of his understanding of English to justify admissibility of an oral confession made to the detective in the absence of the interpreter. We must concur in the trial judge's finding that the activity of the interpreter during preparation of and prior to the signing of the written statement effectively resolved any language difficulties. Furthermore, admissibility of the oral statement was not a critical issue in this case, and error in its admission would be harmless. *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967).

Appellant contends that the trial judge committed error in admitting the signed statement of confession because the Commonwealth failed to produce the original notes of the oral confession in Spanish and the English translations thereof and because it was not a sufficiently complete statement. The evidence indicates that after being advised of his rights, appellant waived counsel and told the police that he had nothing to add to the written statement which had been fully translated and explained to him in Spanish. While we agree with the trial judge that the failure of the police to preserve the interim notes and translations used in the compilation of the written statement was not a reasonable act, it was not a prejudicial one. Appellant has never maintained that the signed statement was materially different in language or construction from his previous statements in Spanish.

Upon review of the proceedings at trial, we are unable to find reversible error in the charge to the jury. In the first of numerous citations of error, appellant asserts that the judge wrongfully charged on the issue of self-defense. However, the record indicates that his counsel approved the court's explanation to the jury

that appellant had chosen to litigate the issue of guilt or innocence rather than to admit the act of shooting, the prerequisite of a plea of self-defense. Reiteration of this status in the jury charge was necessary to deter the effect of certain attempts by counsel to interject theories of self-defense during closing argument.[4]

A second citation of error in the jury charge is the statement by the court that it was important for the jurors to decide whether, in point of fact, Lopez had "some knowledge of English and was able to understand and/or speak it at all." While this direction misconstrues the law, its portent was mitigated to a large degree by a specific remedial instruction that the jury would have to be satisfied that Lopez had sufficient knowledge of English to understand "what is going on, what is said to him and what he says." It is well-settled that remedial instructions to a jury may rectify prior prejudicial error. *Commonwealth v. Murray*, 437 Pa. 326, 263 A. 2d 886 (1970). Whatever error remained would have been harmless beyond a reasonable doubt. *Chapman v. California, supra.*

Appellant contends that it was error for the trial judge to inform the jury that there had been no testimony that Lopez did not understand or speak English. We disagree, for this statement was an accurate summation of the evidence theretofore presented to the jury, and the court neither indicated that the jury could draw adverse inferences from appellant's refusal to testify in reflecting upon his competency in English nor suggested that the Commonwealth was relieved of its burden

---

[4] It is also clear that the trial court correctly sustained the Commonwealth's objection to appellant's cross-examination of a pathologist on the possible cause of abrasions upon one of the decedent's hands. A question as to whether the injury could have resulted from holding a ladder and striking someone with it is relevant only to the concept of self-defense, admittedly not here in issue.

of proof on that point. Under the circumstances there was no error.

We also conclude that there is no merit to the contention that the trial judge erred in charging that appellant's guilt or innocence would not be affected by the existence of other participants in the crimes. During closing argument appellant's counsel raised the question of whether someone else could have been involved in the shooting. It was not prejudicial error for the judge thereafter to remark that appellant would be equally guilty with any other participants, with the adjoinder that the guilt or innocence of other participants, of whom there had been no evidence, could not influence the jury's consideration of the case. To the contrary, it was the duty of the court to explain each legal doctrine from which inferences might be drawn.

Finally, appellant cites as error the charge to the jury that "If you accept the oral statement and Exhibit 12 [the written and signed statement] it's certainly very important and perhaps conclusive evidence of guilt of the defendant in second degree." The judge spoke only in terms of the possibility that the confession by itself could be conclusive evidence of guilt. Indeed, he cautioned immediately that this statement was not made with a desire to influence the jurors in any way and that the jury alone was to determine the credibility of the confessions. In view of his previous full explanation of the doctrine of voluntary manslaughter, we cannot here adduce error.

Judgment affirmed.

Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.

Mr. Justice ROBERTS dissents.