399 A.2d 690
**COMMONWEALTH of Pennsylvania**
v.
**Joseph STEFFY, Appellant.**
Superior Court of Pennsylvania.
Submitted March 20, 1978.
Decided March 9, 1979.

John W. Packel, Assistant Public Defender, Chief, Appeals Division, Philadelphia, for appellant.

Robert W. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

CERCONE, Judge:

Appellant, Joseph Steffy, appeals from a conviction of burglary and criminal conspiracy. He was tried before a judge after waiving his right to a trial by jury. A sentence

of six months to five years was imposed on each count, to be served concurrently. In this appeal the appellant questions the constitutionality of his identification by a witness at the preliminary hearing and the subsequent admission of such testimony into evidence at the trial.

On June 7, 1976, at approximately 11:30 A.M., the appellant and his girlfriend went to the home of Mr. and Mrs. Yeager to take Mrs. Yeager to the dentist, as had been previously arranged.[1] Mrs. Yeager admitted the two people into her home and invited them into the kitchen while she went upstairs to finish dressing. At about 12:30 P.M., Mrs. Yeager left with appellant and his girlfriend, along with appellant's young daughter and the Yeagers' three year old son. As they were leaving, Mrs. Yeager discovered that her keys to the house were missing, but she nevertheless locked the door as the group left the house. Mr. Yeager was working a 2:00 P.M. to 10:00 P.M. shift that day and thus he was not at home. It was arranged between the parties that while Mrs. Yeager was at the dentist, appellant would care for her son and would return to pick her up. After her appointment, Mrs. Yeager waited until about 4:30 P.M. and when appellant did not return, she went to the home of her sister-in-law. Shortly after her arrival, appellant entered with the Yeager boy and explained that he had had car trouble. Later that night when Mr. Yeager entered his home, he discovered that their television and stereo sets were missing, several drawers were ransacked, and a screen in a kitchen window was missing. There were, however, no visible signs of a forced entry. Mr. Yeager went to his brother's home suspecting his family might be there and upon seeing appellant, accused him of "robbing" his home, based on information Mr. Yeager received from his neighbors.

1. Mrs. Yeager first met appellant and his girlfriend two weeks prior to June 7, 1976, at Mr. Yeager's brother's house. Appellant was a friend of Mr. Yeager's brother and sister-in-law and was staying at their house for a couple of weeks until he could locate an apartment of his own.

This appeal focuses on the identification and testimony of a neighbor of the Yeagers. Both at the preliminary hearing and at trial, the witness testified that she saw appellant on four different occasions entering or leaving the Yeager home on the day in question. She first saw him at about 11:30 A.M. in the company of a woman when they were admitted to the Yeager home by Mrs. Yeager. About 10–15 minutes later, the witness observed appellant leave and then, a few minutes later, she saw him re-enter the Yeager home. Later that day, at approximately 3:30 P.M., the witness saw appellant and a female companion enter the Yeager home, using a key. She did not see appellant again, until identifying him at the preliminary hearing as the man she saw on the day in question. This is the evidence directly linking appellant to the crime. Another neighbor testified that between 3:30 and 4:00 P.M., she saw a girl carrying a large covered bundle out of the Yeager home and place it next to a greenish-blue car with a black top. Other witnesses described the car appellant was driving that day as being green or blue with a black vinyl top. Counsel for appellant moved to suppress the neighbor's testimony on the grounds that the identification of appellant was made under "unduly suggestive" circumstances. The motion to suppress was denied and the case proceeded to trial.

On this appeal, appellant again contends that the circumstances surrounding the identification were overly suggestive and in violation of appellant's 14th Amendment right to due process and, second, that the identification was initially made prior to counsel being appointed, resulting in a denial of appellant's Sixth Amendment right to counsel. Further, appellant submits that the identification of appellant at trial was tainted by the prior unconstitutional identification.

Because appellant failed to preserve the issue of the lack of counsel stemming from the initial defendant-witness confrontation, we do not reach the merits of this question. Under Rule 323, Pa.R.Crim.P., 19 P.S. Appendix, a timely motion to suppress must state in detail both the evidence sought to be suppressed as well as the grounds for suppres-

sion in order to avoid a waiver of the issue.[2] A claim of lack of counsel was conspicuously absent from appellant's motion to suppress.[3] Pennsylvania case law is clear that appellant is now precluded from raising an issue that he failed to raise in pre-trial motions. *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975); *Commonwealth v. Lopez*, 455 Pa. 353, 318 A.2d 334 (1974); *Commonwealth v. Williams*, 454 Pa. 261, 311 A.2d 920 (1973). Moreover, appellant also failed to raise this issue in his post-trial motions for a new trial and in arrest of judgment. Rule 1123, Pa.R.Crim.P. (19 P.S. Appendix), precludes appellant from now relying on this alleged error.[4] *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A.2d 171 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

Appellant did, however, properly preserve the question of whether or not the circumstances surrounding the identification were unduly suggestive to the point of denying appellant his constitutional right to due process guaranteed by the Fourteenth Amendment. Appellant contends that since the first confrontation between the identification witness and the defendant occurred at the preliminary hearing when the appellant was brought in wearing handcuffs and escort-

2. Rule 323 provides in part:
   "(b) . . . 'If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.' (d) The motion shall state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof."

3. Appellant's motion to suppress consisted of a printed checklist of the grounds for the motion. Only two items were not checked off, one of which was that "the defendant was denied his right to counsel at an identification procedure where counsel was required."

4. Rule 1123(a) provides that:
   "Within ten (10) days after a finding of guilt, the defendant shall have the right to file written motions for a new trial and in arrest of judgment. Only those grounds may be considered which were raised in pre-trial proceedings or at trial, unless the trial judge, upon cause shown, allows otherwise. Argument shall be scheduled and heard promptly after such motions are filed, and only those issues raised and the grounds relied upon in the motions may be argued. . . ."

ed by police, the identification should have been suppressed. Apparently, the witness was not asked to identify the suspect from photographs or at a line-up prior to the preliminary hearing.

Criminal defendants in Pennsylvania do not have a constitutional right to a line-up. *Commonwealth v. Cornish,* 471 Pa. 256, 370 A.2d 291 (1977); *Commonwealth v. Evans,* 460 Pa. 313, 333 A.2d 743 (1975). Therefore, the mere lack of a pre-trial line-up procedure does not render the identification testimony inadmissible.[5] In order to decide whether the appellant has been denied his constitutional rights, we must determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401. The fact that the confrontation was on a one-to-one basis in a courtroom setting is not in itself sufficient reason to exclude the evidence. Rather, ". . . the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.' *Simmons v. United States,* 390 U.S. [377] at 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 [1968] . . . It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in *Foster* [*v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)]" *Neil v. Biggers,* 409 U.S. at p. 198, 93 S.Ct. at p. 382. The United States Supreme Court has enunciated the factors which contribute to the "totality of circumstances" test as including: ". . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. at pp. 199–200, 93 S.Ct. at p. 382. See also *Manson v. Brath-*

5. Moreover, appellant's counsel did not request a line-up. Therefore, the case-law discussing the judge's exercise of discretion in the disposition of such a request is not applicable. See, e. g., *Commonwealth v. Sexton,* 246 Pa.Super. 30, 369 A.2d 794 (1977).

*waite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In the instant case, the neighbor testified that she saw the appellant on the day in question on four different occasions and that she saw his face. Moreover, these encounters occurred in the late morning and afternoon hours of a sunny summer day. The witness was apparently quite attentive to the goings-on in the neighborhood that afternoon as she was able to testify as to where the appellant parked his car, who was with him or whether he was alone at the various times she saw him, the color of his car, his general description, and the fact that he and a woman finally entered the Yeager home by unlocking the front door with a key. The preliminary hearing occurred only five weeks after the crime occurred. Although the witness only gave a general description to the police of the man she saw, she never waivered from her testimony that the appellant was the man she saw. Defense counsel, extensively cross-examined her both at the preliminary hearing and at trial and she consistently identified the appellant as the man in question. Moreover, there was no indication that the witness was aided in any way by the police or the Yeagers in her identification, although defense counsel attempted in cross-examination to elicit such information. See, e. g., *United States ex rel. Riffert v. Rundle,* 464 F.2d 1348 (3d C.1972). Therefore, we hold that under the totality of the surrounding circumstances, there was not a "substantial likelihood of misidentification" so as to deny appellant his right of due process. *Neil v. Biggers,* supra. Since that is the case, the identification evidence was properly submitted to the fact-finder. If the circumstances surrounding the identification were questionable, it was for the fact-finder to make that determination in weighing the credibility of the witnesses and the weight of the evidence. *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

We, therefore, do not need to reach the question of whether the identification at trial was tainted by the pre-trial confrontation. However, it may be noted that the test would be substantially the same; the prosecution must

118

establish that the in-court identification flows independently from the witness' observations at the time of the crime and not from the unduly suggestive pre-trial confrontation. To make this determination, one must examine "the totality of the circumstances" which includes the factors enunciated in *Neil v. Biggers,* supra. See, e. g., *Commonwealth v. Fowler,* 466 Pa. 198, 352 A.2d 17 (1976); *Commonwealth v. Garland,* 234 Pa.Super. 241, 339 A.2d 109 (1975). Thus, as we have already examined the facts surrounding the witness' observations on the day of the crime, even assuming, arguendo, that the pre-trial identification was overly suggestive, the in-court testimony would still be admissible as an independent identification by the witness. Therefore, we hold that the identification evidence was properly admitted.

Accordingly, the judgment of sentence of the court below is affirmed.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.