439 A.2d 195

**COMMONWEALTH of Pennsylvania,**

v.

**William E. DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 5, 1980.

Filed Dec. 29, 1981.

Joyce S. Mozenter, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, William Davis, was found guilty before a judge, sitting without a jury, of criminal conspiracy, burglary, and theft by unlawful taking or disposition. Post-verdict motions were denied, and appellant was sentenced to concurrent terms of one to three years imprisonment. This appeal followed. We affirm.

Before this Court, appellant raises issues concerning the identification evidence which linked him to the crime. Appellant does not argue that the prosecution failed to establish one of the elements of the crime of burglary; rather, he claims that the evidence was insufficient to establish his identity as one of the perpetrators of the crime. We cannot agree for the reasons herein stated.

The record at trial established the following:

On December 16, 1978, the victim, Oscar Squire, and a companion returned to his apartment at approximately 12:00 midnight, which was forty-five minutes after his initial departure. The victim noticed that the lights in his apartment had been turned on, and that music was playing. Upon entering, the victim saw two strangers in his apartment; immediately, he yelled for both of them to leave. These individuals then ran through the bedroom, through the kitchen and out the back door.

The victim's testimony continued and set forth the following scenario:

[Prosecution] "Which way did they run, Mr. Squire?
[The Witness] They ran through the bedroom, through the kitchen, out the back door.

Q  So I understand, are there two doors to your apartment?

A  Yes.  There is a door from the hallway of the apartment building into the apartment and then there is a back door which leads out to the porch, which is the back of the building.  The apartment is on the first floor.

Q  Now, in order for the defendant to have gotten from the living room to the kitchen, would he have to pass you at the front door?

A  No.  There is an immediately [sic] hallway when you walk into the apartment which goes into the kitchen and at the other end of the hallway leads into the living room.  The living room has two doors.  One for the hallway; one for the bedroom.  The bedroom is between the living room and kitchen.  So, there's a doorway there.  So, you can leave the living room, come through the bedroom, through the kitchen and out the back door, or your can come down the hallway, pass around the bedroom into the kitchen and out the back door.

Q  Which way did the defendant go?

A  They came through the bedroom, through the kitchen and out the back door.

Q  Did he pass you through the kitchen out the back door?

A  Well, there were two people.

Q  The defendant, specifically?

A  The defendant was the second one but I walked into the kitchen once the first person ran out so [the appellant] passed right past me.

Q  In the kitchen area?

A  In the kitchen area.

Q  Was that the second time that you had seen the defendant?

A  The first time I saw the defendant he was kneeling down.  I saw the top of his head."

(N.T. 8/7/79, at 13–14)

The victim's testimony on cross-examination also elicited the following testimony:

[Defense Counsel] "So, the first you saw any faces was as they came from the bedroom into the kitchen and ran out the back door?

[The Witness] Yes.

Q Would you describe what you saw of the two men at that time?

A First man was about my built. He was light complexion [sic] and he had some kind of bumpiness or lumpiness to his face, his skin.

The second person was smaller with a moustache dark skinned with a hat on his head.

Q Hat on his head?

A (Nods in the affirmative)

Q This was the type of hat—the sort of thing that's pulled down over his forehead?

A I don't know. You asked me that question before. It was just a hat. I didn't pick up the hat. I was just looking at the face.

Q Now, when the police officer came to take the report of the burglary, you told him this description; didn't you?

A Yes.

THE COURT: What was that?

[By the Prosecutor]

Q When the police officer came to take a report from you, you gave him a description of the two men?

A Yes.

Q Because it was very fresh in your memory since they just, a few minutes before, had left the house; is that right?

A Yes."

(N.T. 8/7/79, at 23–24)

Appellant argues that the above evidence was insufficient to establish his identity as one of the perpetrators because appellant was identified initially at an "overly suggestive confrontation[, a preliminary hearing,] between the victim of the alleged burglary and the accused." Brief for Appellant, at 9. The witness, the victim, in this case, was not

asked to identify appellant from photographs or at a line-up prior to the preliminary hearing. Appellant's claim therefore, must be examined in view of the following standards:

"*The fact that the confrontation was on a one-to-one basis in a courtroom setting is not in itself sufficient reason to exclude the evidence. Rather, "*. . . *the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'* Simmons v. United States, 390 U.S. [377] at 384, 88 S.Ct. 967, [at 971] 19 L.Ed.2d 1247 [1968] . . . It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in Foster [v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)]" Neil v. Biggers, 409 U.S. at p. 198, 93 S.Ct. [375] at p. 382 [34 L.Ed.2d 401]. The United States Supreme Court has enunciated the factors which contribute to the "totality of circumstances" test as including: "*. . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.*" Neil v. Biggers, 409 U.S. at pp. 199–200, 93 S.Ct. at p. 382. See also Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)." Commonwealth v. Steffy, 264 Pa.Super. 110, 116, 399 A.2d 690, 693 (1979) (emphasis added).

We also have said that:

"*[o]f these factors, the opportunity of the witness to observe the defendant at the time of the incident is considered to be the most important.* Commonwealth v. Wilson, 450 Pa. 296, 301 A.2d 823 (1973); Commonwealth v. Spencer, 442 Pa. 328, 275 A.2d 114 (1971); Commonwealth v. Tate, 229 Pa.Super. 202, 209, 323 A.2d 188, 192 (1974) (HOFFMAN, J., dissenting)." Commonwealth v. Smith, 262 Pa.Super. 258, 265, 396 A.2d 744, 747 (1978) (emphasis added).

■ Applying the above standards to the instant case, the record reveals that the victim first noticed upon returning to his apartment that the "lights were on" and that "two people were in the apartment." (N.T. 8/7/79, at 10). Although initially, the witness could only see the top of appellant's head, because he was kneeling down behind the sofa some fifteen feet away, he nevertheless was able to closely observe appellant when, en route to the back door, "[the appellant] passed right past [the witness]." (N.T. 8/7/79, at 14). Under such good lighting conditions, the witness's brief encounter with the appellant provided ample opportunity for him to view the suspect. *See Commonwealth v. Townsend,* 280 Pa.Super. 155, 160–61, 421 A.2d 452, 455 (1980) (While the witness observed the accused "for only a matter of seconds, she did so in daylight from a short distance and with a full view of his face without obstruction."). Additionally, the witness testified that he could not describe in detail what kind of hat appellant was wearing because he "was just looking at the face." (N.T. 8/7/79, at 24).

At the preliminary hearing, the victim testified that when appellant ran past him, he was within a foot or two of the appellant. The remainder of the witness's testimony was consistent with his trial testimony. However, at the preliminary hearing, defense counsel on cross-examination elicited testimony from the witness that as appellant was headed toward the rear door, he had "more of a frontal side profile than just a side profile." (N.T. 1/5/79, at 15). At no time, did the witness waver from his testimony that appellant was the man he saw in the apartment. It is to be noted that the preliminary hearing occurred only three weeks after the crime; thus, the period of time that had elapsed between the preliminary hearing and the date the crime was not unreasonable. See *Commonwealth v. Steffy, supra* (identification evidence was admissible where the preliminary hearing occurred five weeks after the crime, and the appellant had not been identified previously from photographs or at a line-up prior to the hearing).

In the case before us, appellant gave the following information to the police:

[The Police] "The complainant stated that about 11:50 p.m., 12/16/78, as they were returning home from walking the dog, they were surprised by two Negro males that were burglarizing their apartment. The two males ran through the rear and escaped in a light colored station wagon, Pennsylvania tag X x-ray 74298, west on Ashmeade. They gave me a description, one Negro male, light complected, wearing a light sweater. Number two male had no description at that time." (N.T. 8/7/79, at 36)

A review of the record reveals that the appellant was the individual ("the number two male") who was not described at the time of the incident. Because of this, appellant argues that the *initial* identification between the witness and the accused was held at a suggestive confrontation, the preliminary hearing. With respect to this aspect of appellant's claim, *Commonwealth v. Floyd*, 494 Pa. 537, 431 A.2d 984 (1981) offers some insight into the subject. In *Floyd*, the witness was not able to identify positively appellant at the preliminary hearing but merely stated that appellant "resembled the shooter." *Id.*, 494 Pa. at 544, 431 A.2d at 988. Although shortly after the incident the witness gave a detailed description of the two men involved, the witness "did not any time unequivocably identify appellant as one of the two perpetrators of the killing. The full extent of his testimony was that appellant looked like one of the men." *Id.* Our Supreme Court concluded that based on the totality of the circumstances, "there [was] nothing to indicate in this record either that the witness was mistaken in his testimony that appellant looked liked [sic] one of the two men he had seen or that his conclusion was compelled by the circumstances of the preliminary hearing." *Id.*

Similarly, in the instant case, we conclude that a review of the total record reveals an absence of evidence to indicate that Oscar Squire, the witness, was mistaken in his testimony. Also, no reference was made by the prosecution to the hearing during its examination of the witness at trial, and the only evidence relating to the preliminary hearing identi-

fication was elicited by defense counsel on cross-examination. Thus, the relevance of the preliminary hearing identification was limited, particularly when the probing of the previous hearing identification was not initiated by the prosecution. Moreover, there was no indication from defense counsel's cross-examination or otherwise that the witness was aided by the police or anyone else in his identification. Accordingly,

> "We hold that under the totality of the surrounding circumstances, there was not a 'substantial likelihood of misidentification' so as to deny appellant his right of due process, *Neil v. Biggers*, [409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)]. Since that is the case, the identification evidence was properly submitted to the fact-finder. If the circumstances surrounding the identification were questionable, it was for the fact-finder to make that determination in weighing the credibility of the witness and the weight of the evidence. *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977)." *Commonwealth v. Steffy*, 264 Pa.Super. at 117, 399 A.2d at 694.

In the instant case, the fact-finder's resolution of the matter was adverse to appellant. Even, however, assuming arguendo, that the pre-trial confrontation was suggestive, we have said that the totality of the circumstances must be examined in order to determine if "the in-court identification flows independently from the witness'[s] observations at the time of the crime and not from the unduly suggestive pre-trial confrontation." *Id.* As previously set forth, the witness's testimony at trial established that there was an independent basis for the identification. *Id.; See also Commonwealth v. Townsend, supra.*

Appellant additionally argues that trial counsel was ineffective for failing to assert appellant's right to a lineup before the preliminary hearing and for failing to object to the limited evidence offered at trial. We cannot agree.

To begin with, an accused does not have a constitutional right to a line-up and the suggestiveness of a court-

room identification is only one factor to be considered in determining the reliability of the identification evidence. See *Commonwealth v. Sexton*, 485 Pa. 17, 22–24, 400 A.2d 1289, 1292 (1979). Moreover, this jurisdiction has "declined to accept a per se rule that a pre-trial, pre-hearing lineup is mandatory in all cases." *Id.*, 485 Pa. at 25, 400 A.2d at 1293. *A fortiori*, counsel's failure to request a lineup or failure to object to identification testimony is not *per se* ineffective assistance. Because a review of the totality of the circumstances revealed that the identification testimony was reliable, and further revealed that even if the preliminary hearing was suggestive, the in-court identification had an independent basis, a lineup or objection would have been fruitless. See *Commonwealth v. Williams*, 274 Pa.Super. 464, 471–72, 418 A.2d 499, 503 (1980).

■ In any event, the record establishes that there was other evidence linking the appellant to the crime since he was apprehended using the stolen credit cards twenty-one hours after the cards were taken during the burglary of the apartment. Therefore, the instant case is distinguishable from *Commonwealth v. Sexton, supra*, where the identification evidence was the sole evidence connecting the defendant to the crime. The record also establishes that trial counsel's decision not to request a line up or to object was not without a reasonable basis. At trial, counsel's strategy was an alibi defense. In connection with this defense, counsel attempted to emphasize that the witness gave no description of the appellant at the time of the crime, and that the first time that the witness had seen the appellant was at a preliminary hearing. In view of the possibility that had a lineup been granted, the alibi defense would have been undermined substantially as counsel would not have been able to highlight the suggestiveness of the preliminary hearing, this writer cannot conclude that even if the issue appellant raises is of arguable merit, counsel's decision was without a reasonable basis designed to effectuate his client's best interests. See *Commonwealth v. Musi*, 486 Pa. 102,

110–12, 404 A.2d 378, 382 (1979) (remand not necessary where the record is sufficient to resolve the issue).

Judgment of sentence affirmed.

JOHNSON, J., concurs in the result.