J-S56026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BABATU B. JOHNSON | |
| Appellant | No. 323 MDA 2015 |

Appeal from the Judgment of Sentence January 14, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0001496-2014

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                  **FILED NOVEMBER 02, 2015**

Babatu Johnson files this timely direct appeal from his aggregate judgment of sentence of 4-8 years' imprisonment for receiving stolen property, persons not to possess firearms and carrying firearms without a license.[1,2]  Johnson raises one issue in this appeal:

> Whether the trial court erred in denying [Johnson's] Motion to Suppress Evidence where the firearm seized from [his] person was uncovered pursuant to an unreasonable and warrantless search and seizure in violation of Article I, Section 8 of the

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3925(a), 6105(a)(1) and 6106(a)(1), respectively.

[2] Following sentencing, Johnson filed a timely post-sentence motion, which the trial court denied, and a timely notice of appeal.  Both Johnson and the trial court complied with Pa.R.A.P. 1925.

Pennsylvania Constitution and the Fourth Amendment to the
United States Constitution?

For the following reasons, we affirm.

When addressing a challenge to the denial of a motion to suppress

evidence, our standard of review

> is limited to determining whether the suppression court's factual
> findings are supported by the record and whether the legal
> conclusions drawn from those facts are correct. Because the
> Commonwealth prevailed before the suppression court, we may
> consider only the evidence of the Commonwealth and so much of
> the evidence for the defense as remains uncontradicted when
> read in the context of the record as a whole. Where the
> suppression court's factual findings are supported by the record,
> we are bound by these findings and may reverse only if the
> court's legal conclusions are erroneous. Where ... the appeal of
> the determination of the suppression court turns on allegations
> of legal error, the suppression court's legal conclusions are not
> binding on an appellate court, whose duty it is to determine if
> the suppression court properly applied the law to the facts. Thus,
> the conclusions of law of the courts below are subject to our
> plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa.2010).

The relevant evidence adduced during the suppression hearing,

derived in accordance with the foregoing scope and standards of review, is

as follows. At 11:04 p.m. on February 1, 2014, Harrisburg police received a

phone call from a citizen on the ANI/ALI call system. N.T., 1/14/15, at 4.

The ANI/ALI system identifies calls coming into the 911 center and identifies

the source of the call. *Id*. The caller provided the same number as the

number reported by the ANI/ALI system. *Id*. Thus, the call came from an

identifiable citizen, not an anonymous informant.

Thirty-three seconds after the call, the 911 center sent a radio dispatch to Officer Ishman, a Harrisburg police officer in the Street Crimes Unit who was working in full uniform along with other police officers and Probation Officer ("P.O.") Travis Banning.  N.T., 1/14/15, at 5-7, 11.  The radio dispatch reported that a man was shot in the head in the area of 17th and Carnation Streets.  *Id*. at 5, 11.  Officer Ishman was a couple of blocks from that location when the call came over the radio, and he and his partner arrived on the scene within seconds in their patrol vehicle.  *Id*. at 11.  He did not hear any shots fired, but this was not uncommon due to the structure of the area and echoing off the buildings.  *Id*. at 20.

As Officer Ishman approached the scene, he observed Johnson jogging away from the scene, crossing the road, and entering the backseat of a parked Buick sedan.  N.T., 1/14/15, at 12-13, 15.  Officer Ishman could not tell if the vehicle was running, but he observed one individual in the driver's seat and one in the passenger seat.  *Id*. at 12-13.  The vehicle left the parking spot and made a left-hand turn onto Carnation Street, and Officer Ishman activated his emergency lights to make a traffic stop.  *Id*. at 14.  At the same time, another police vehicle came up the wrong way on Carnation Street, trapping the Buick between the police vehicles.  *Id*. at 15.  The total elapsed time between the radio dispatch and the traffic stop was one minute.  *Id*.

Officer Ishman based his decision to make a traffic stop on the fact that it was a very high crime area (rated 9 or 10 out of 10 for drugs, guns, and violent crimes), the nature of the call (a man shot in the head), his suspicion that the vehicle was involved in the shooting, the fact that Johnson was running away from the scene of the alleged shooting, and the proximity of time and space between the radio dispatch and the observation of the vehicle.  N.T., 1/14/15, at 8, 17-18.

Officer Ishman and the other officers asked the occupants of the Buick to step out one at a time, and P.O. Banning frisked each occupant for officer safety.  N.T., 1/14/15, at 16-17.  Officer Ishman testified that it was his decision to conduct a traffic stop and pat down the vehicle occupants.  *Id*. at 16.  At the direction of Officer Hammer, another officer on the scene, P.O. Banning removed Johnson, the right rear passenger, from the car, and asked Johnson to place his hands on top of his head as he exited the vehicle. *Id*. at 28.  P.O. Banning placed Johnson in handcuffs, informed Johnson that he was not under arrest at this point, and then patted Johnson down for weapons.  *Id*. at 29.

While patting down Johnson's waist area, P.O. Banning felt a large, hard object that he immediately determined was a firearm.  N.T., 1/14/15, at 29.  He did not have to go into any pockets or compartments within Johnson's clothing to determine that it was a firearm.  *Id*.  The firearm was positioned on Johnson's left side hip in a cross-draw position, tucked into

Johnson's belt, and was not in a holster. *Id*. at 30. P.O. Banning immediately announced a ten code for a firearm and removed the firearm from Johnson's waistband. *Id*. Another officer stepped in to take hold of Johnson while P.O. Banning cleared the weapon of ammunition. *Id*. The gun was a semi-automatic Smith and Wesson 40-caliber pistol loaded with 10 rounds in the magazine and one round in the chamber. *Id*. at 31, 35. Officer Ishman learned later that the incident that caused the radio dispatch was something other than a gunshot wound. *Id*. at 17.

As stated above, Johnson presents one question on appeal: whether the police violated his constitutional rights through an unlawful warrantless search and seizure. His argument on this question consists of three components: (1) Officer Ishman lacked reasonable suspicion to stop the Buick in which Johnson was a backseat passenger, (2) P.O. Banning's frisk was illegal; and (3) P.O. Banning had no statutory authority to detain or frisk Johnson.

We first address whether Officer Ishman had reasonable suspicion to stop the car in which Johnson was a passenger. Both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures. *Commonwealth v. Miller*, 56 A.3d 424, 429 (Pa.Super.2012). There are three categories of interactions between citizens and police. In evaluating the level of interaction, courts conduct an

objective examination of the totality of surrounding circumstances. *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa.2014). The first interaction, a "mere encounter", does not carry any official compulsion to stop or respond and therefore does not require the police officer to have any level of suspicion. *Id*. A mere encounter is not a seizure, because a reasonable person would feel free to leave or terminate the encounter. *Id*. at 302-03. The second interaction, an "investigative detention", is a seizure which subjects an individual to a stop and temporary detention but is not so coercive as to constitute the functional equivalent of an arrest. *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa.2000). The third interaction, an arrest or custodial detention, the most restrictive encounter, is a seizure that must be supported by probable cause. *Id*.

To conduct an investigative detention, an officer must have at least reasonable and articulable suspicion that criminal activity is afoot and may continue only so long as is necessary to confirm or dispel such suspicion. *Commonwealth v. Au*, 42 A.3d 1002, 1004 (Pa.2012). The court decides whether reasonable suspicion exists at the time of an investigatory detention by examining the totality of the circumstances to determine whether the officer had a particularized and objective basis for suspecting the individual of criminal activity. *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa.Super.2011). To establish grounds for reasonable suspicion, "the officer must articulate specific observations which, in conjunction with reasonable

inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Commonwealth v. Reppert**, 814 A.2d 1996, 1204 (Pa.Super.2002). Reasonable suspicion is a less demanding standard than probable cause "not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." **Commonwealth v. Fell**, 901 A.2d 542, 545 (Pa.Super.2006).

In assessing reasonable suspicion, the court must give weight to the inferences that a police officer may draw through training and experience. **Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa.Super.2014). "Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Commonwealth v. Rogers**, 849 A.2d 1185, 1189 (Pa.2004); **see also Commonwealth v. Scarborough**, 89 A.3d 679, 684 (Pa.Super.2014) (holding that "single factor of the defendant keeping his hand in his pocket after being asked to remove it" constituted reasonable suspicion to stop and frisk).

Many different factors can give rise to reasonable suspicion. For example, "unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a **Terry**[3] stop." **In Re D.M.**, 781 A.2d 1161, 1164 (Pa.2001). Moreover, police officers need not personally observe illegal or suspicious conduct; they instead "may rely upon the information of third parties, including 'tips' from citizens." **Commonwealth v. Lohr**, 715 A.2d 459, 461 (Pa.Super.1998). "Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." **Commonwealth v. Barber**, 889 A.2d 587, 593 (Pa.Super.2005). In addition, officers may "[conduct] a vehicle stop based upon a radio bulletin if evidence is offered at the suppression hearing to establish reasonable suspicion." **Id**. at 594. Thus,

> it is not necessary that the officer stopping the automobile personally had the requisite reasonable suspicion. [Rather,] [f]or a stop to be valid, someone in the police department must possess sufficient information to give rise to reasonable suspicion. The officer with the reasonable suspicion, usually the dispatcher, need not convey all of this background information to the officer who actually effectuates the stop. Thus, the police may justify the search by presenting sufficient evidence at the suppression hearing that someone in the chain of command had

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

reasonable suspicion before the stop, even if the arresting officer did not.

*Id*. Yet other factors that bear upon the assessment of reasonable suspicion include the time of day and the officer's experience. ***Commonwealth v. Bryant***, 866 A.2d 1143, 1147 (Pa.Super.2005).

In this case, a combination of facts provided reasonable suspicion for Officer Ishman to stop the Buick in which Johnson was a passenger, including (1) the report to police from an identifiable citizen of a man shot in the head of in the area of 17th and Carnation Streets; (2) the radio dispatch to Officer Ishman reporting the shooting at this location; (3) the area of the reported shooting was a high crime area; (4) the time of day (11:00 p.m.); (5) the officer's arrival at the scene within seconds of the radio dispatch; and (6) the officer's observation of Johnson running away from the scene of the alleged shot and entering the vehicle. Pennsylvania courts have repeatedly found reasonable suspicion in similar circumstances. ***See In Re D.M.***, 781 A.2d 1161, 1164 (Pa.2001) (police officer possessed reasonable suspicion to stop juvenile, where officer received anonymous tip that person had gun and juvenile, who met person's description, fled when officer approached him); ***Commonwealth v. Walls***, 53 A.3d 889, 894 (Pa.Super.2012) (police officer had reasonable suspicion that criminality was afoot where he heard radio broadcast describing an individual with a gun, officer observed defendant one-half block away from the location mentioned on radio, defendant matched the description of suspect, and defendant fled after seeing officer);

*Commonwealth v. Bryant*, 866 A.2d 1143, 1147 (Pa.Super.2005) (reasonable suspicion where officer encountered defendant in high-crime area, officer heard firing of gunshots in area, officer saw defendant and his companions running around corner from where officer heard shots originate, and other individuals in street were not fleeing area of gunshots).

Johnson next complains that P.O. Banning lacked reasonable suspicion to frisk him for weapons, because there was no reason to believe that he was armed and dangerous. We disagree. P.O. Banning's action in patting down Johnson was a *Terry* frisk, a type of investigative detention requiring reasonable suspicion. *Davis*, 102 A.3d at 999. The purpose of a *Terry* frisk is not to discover evidence of crime but to protect the police officer conducting the investigation. *Id*.

Here, the combination of the six facts detailed above gave the officers at the scene, including P.O. Banning, reasonable suspicion to believe that Johnson was armed and dangerous. Therefore, P.O. Banning was entitled to pat down Johnson and remove any weapons that he could identify by feel. He felt an object in Johnson's waist area that he immediately recognized was a gun. It was entirely reasonable under these circumstances for P.O. Banning to seize the weapon from Johnson's person. *Davis*, 102 A.3d at 1000 (during valid *Terry* patdown, officer properly seized object from defendant's jacket pocket that he immediately recognized was a gun).

Finally, Johnson argues that P.O. Banning did not have the statutory authority as a probation officer to search Johnson's person. Johnson waived this issue by failing to raise it in his suppression motion or during the suppression hearing. *See Commonwealth v. Steffy*, 399 A.2d 690, 692 (Pa.Super.1979) (failure to state particular ground for relief in motion to suppress constitutes waiver). Furthermore, Johnson waived this issue by failing to raise it in his Pa.R.A.P. 1925(b) statement of issues on appeal. *Commonwealth v. Patterson*, 91 A.3d 55, 72 (Pa.2014) (murder defendant waived challenge asserted on appeal to exclusion of proffered testimony by failing to raise issue in Pa.R.A.P. 1925(b) statement).

For these reasons, we affirm Johnson's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/2/2015

- 11 -