Commonwealth *v.* Williams, Appellant.

Argued May 7, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused November 9, 1970.

*Martin M. Krimsky*, with him *Kremer, Krimsky & Luterman*, for appellant.

*James D. Crawford*, Deputy District Attorney, with him *Carroll Connard* and *T. Michael Mather*, Assistant District Attorneys, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 9, 1970:

Kenneth Williams was arrested in Philadelphia for murder and aggravated robbery. On February 8, 1966, he was convicted by a jury of murder in the second degree and robbery. Subsequently, the trial court granted a new trial. At the retrial, the Commonwealth proceeded on the murder indictment only, and Williams was convicted of voluntary manslaughter. A new trial motion was refused, and a prison sentence was imposed. This appeal followed.

The prosecution emanated from the fatal shooting of the proprietor of an auto supply store on December 20, 1964, in the furtherance of a robbery. At trial, the Commonwealth's case connecting Williams with the crime depended almost entirely on the testimony of Robert Mathis, an eyewitness, who was a customer in the store at the time. Williams did not testify personally, but presented the testimony of several witnesses to establish an alibi defense.

Immediately after the occurrence, Mathis provided the police with a description of the killer's approximate height and weight. He also described the felon as wearing a cap and a long trench coat. In the days immediately following, Mathis was shown "thousands" of "mug shots" by the police, but failed to identify any of those portrayed. On January 18, 1965, he was shown "12 to 15" photographs and selected one of Williams as the man guilty of the crime. The photographs exhibited to Mathis on this date included "mug shots" of different individuals and a "polaroid" photograph of Williams wearing a cap and a long trench coat. As a result of this identification, Williams was taken into police custody, and on January 19th a line-up was conducted in police headquarters. The line-up included Williams wearing a long trench coat and a cap, and four other black males with varied dress. Mathis viewed the line-up, and again picked out Williams as the perpetrator of the crime. During these proceedings, Williams did not have counsel.

A timely pretrial motion was filed to suppress all testimony concerning Mathis' identification of Williams from the photographs and line-up and evidence of certain utterances Williams allegedly made to the police when he was taken into custody, which might be construed as a consciousness of guilt. A hearing followed and the court refused to suppress the incriminating utterances. A determination of whether or not the

testimony concerning the pretrial identification should be suppressed was reserved for consideration and decision at trial.

At trial, after describing the operative circumstances of the crime, Mathis, without objection, identified Williams, who was then sitting in the court room, as the killer. The district attorney then commenced to inquire of Mathis about his pretrial identification, and counsel for Williams requested a hearing outside the presence of the jury to determine the admissibility of this particular testimony. Such a hearing was denied, and the testimony was received over objection. The court's denial of the requested hearing is assigned as error.

The present trial commenced on July 3, 1968, and concluded on July 16th. At that time, the Pennsylvania Rules of Criminal Procedure did not mandate a hearing outside the presence of the jury on motions to suppress evidence, such as here concerned. Such a requirement was incorporated in Rule No. 323 by Amendment, effective February 3, 1969. Hence, no transgression of our then procedural rules occurred. Nor are we persuaded that constitutional due process was violated.

Williams cites *Sims v. Georgia*, 385 U. S. 538, 87 S. Ct. 639 (1967), as authority to support his position that the requested hearing was constitutionally required prior to the admission of the challenged testimony into evidence before the jury. *Sims* dealt exclusively with the question of the admissibility of an alleged coerced confession, and, consonant with its prior ruling in *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774 (1964), the court held that a hearing and determination as to the voluntariness of the confession was required before the jury was allowed to hear testimony concerning it. But, the instant case presents a different situation and the unfairness and possible irrevocable prejudice creat-

ed by permitting the jury to hear testimony of a confession which should not be considered in determining guilt because of its involuntariness (an evil *Sims* and *Jackson* aimed to eradicate) is not present here.

Moreover, it is significant that Williams did not object at trial to the in-court identification, nor is the question of its admissibility raised here. Since the challenged identification occurred prior to June 12, 1967, *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926 (1967), and *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951 (1967) (requiring the presence of counsel at pretrial identification procedures) do not control. However, as indicated in *Stovall v. Denno,* 388 U.S. 293, 87 S. Ct. 1967 (1967), due process has always required fairness in the conduct of pretrial identification procedures. But the purpose of exploring and evaluating the fairness of these pretrial procedures is to determine if the in-court identification was fatally tainted thereby. Here, however, the in-court identification was not and is not now challenged.

While Williams has not specifically assigned as error the admission of the pretrial identification testimony, this is implicit in his position. This evidence was properly received, unless the identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968). And, this must be determined on the totality of the circumstances. *Coleman v. Alabama,* 399 U.S. 1, 90 S. Ct. 1999 (1970). After a consideration of all the circumstances disclosed by the record, we are not convinced that the use of the challenged testimony was constitutionally precluded.

Finally, it is maintained that the trial court committed error in permitting evidence of Williams' incriminating utterances made at a time when he was not given the warnings of constitutional rights required

by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). Since the first trial commenced and was finalized before the effective date of *Miranda*, evidentiary use of Williams' statements at the retrial was not constitutionally proscribed, merely because the *Miranda* warning were not given. *Jenkins v. Delaware*, 395 U.S. 213, 89 S. Ct. 1677 (1969), and *Commonwealth v. Willman*, 434 Pa. 489, 255 A. 2d 534 (1969).

We find nothing in the record to require a new trial. Judgment affirmed.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

While I concur in the result, I cannot accept the position that the lineup procedures in this case satisfy due process.

The United States Supreme Court has made a thorough study of lineups and has concluded that the potential for misuse and prejudicial suggestion inherent in pre-trial confrontations is substantial. *United States v. Wade*, 388 U.S. 218, 232, 87 S. Ct. 1926, 1935 (1967). Noting that lineups are most often used to crystallize eyewitnesses' identification of the defendant, the Court specifically condemned various "suggestive procedures," one of which was ". . . that only the suspect was required to wear distinctive clothing which the culprit allegedly wore."[1] Id. at 233, 87 S. Ct. at 1935.

---

[1] The other procedures condemned by the Court were as follows: ". . . that all in the lineup but the suspect were known to the identifying witness, that the other participants in the lineup were grossly dissimilar in appearance to the suspect, . . . that the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone or is viewed in jail, that the suspect is pointed out before or during a lineup, and that

Of course, as the majority observes, the instant case is governed by the pre-*Wade* standard, and the petitioner is entitled to relief only if the pre-trial confrontation, depending on the totality of the circumstances, was so unnecessarily suggestive as to be a violation of due process. See *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967).

However, the facts of this case present a possibly all too frequent police practice which should not pass unmentioned. The Commonwealth's brief stresses the fairness of the lineup procedure involved in this case, and I, for one, cannot refrain from rejecting that contention.

The record reveals that the Commonwealth's case depended primarily on the testimony of an eye witness, one Robert Mathis. The testimony surrounding the pre-trial confrontation is in conflict, but it appears that Mathis was shown thousands of "Rogues Gallery Pictures," or mug shots, and did not identify any of them as the man he had witnessed committing the crime. On the day that Mathis picked out defendant's picture, he had been shown a group of between fifteen to eighteen pictures, all but three of which were mug shots, which have a head-on and a profile view of the suspect. The remaining three pictures were full length polaroids of people with army-style trench coats and caps. The polaroid of defendant had been taken a few days earlier.

Two or three days subsequent to the identification of the picture, the police conducted a lineup. It is true that all five men in it were of the Negro race. However, two were at least thirty pounds lighter than defendant. More importantly, Williams was the only person in the lineup wearing a trench coat and a cap—

the participants in the lineup are asked to try on an article of clothing which fits only the suspect." 388 U.S. at 233, 87 S. Ct. at 1935-36 (footnotes omitted).

the same type of clothing allegedly worn by the culprit. Had the other men in the lineup been asked to try on the coat, assuming that they were the same size as defendant, or had everyone been dressed in a similar coat, I would have no quarrel with the procedure. However, I believe that to have the defendant as the only person in the lineup wearing the costume of the man the eye witness saw commit the crime is sufficiently suggestive to be a violation of due process. By such conduct, the police unquestionably singled the defendant out as the suspect they feel committed the crime, and this is impermissible.

Having reached such a conclusion, one alternative would be to remand to the trial court, as was done in *Wade*, for a hearing without a jury to afford the prosecution an opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect *other* than the lineup identification—in other words, to determine whether the in-court identifications had an "independent origin" or were "tainted by the illegal line-up." *Gilbert v. California*, 388 U.S. 263, 272, 87 S. Ct. 1951, 1956 (1967). See *United States v. Wade*, supra, 388 U.S. at 242, 87 S. Ct. at 1940. However, two factors restrain me from urging that disposition and account for my concurrence in the result in this case.

First, the record as it stands indicates sufficient independent grounds so that the in-court identifications had an independent origin, and thus the violation of due process in the lineup was harmless error. See *Harrington v. California*, 395 U.S. 250, 89 S. Ct. 1726 (1969); *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967).[2] Among the facts that I consider im-

---

[2] In my view, *Harrington*, as the dissent in that case observed, broadened *Chapman*. In *Chapman*, the test was that for an error to be "harmless," it must have made *no* contribution to a criminal conviction. 386 U.S. at 26, 87 S. Ct. at 829. In *Harrington*, the

portant in this respect are the following: Mathis had an opportunity to observe the unmasked culprit at close range for over two minutes in a lighted room during the daytime at the time of the crime; Mathis was able to give the police an accurate enough description of the perpetrator right after the crime so that an artist's composite sketch was made which aided the police in first apprehending the defendant for questioning; Mathis was always positive about his identification; the police made no statements to Mathis alleging that Williams was their prime suspect; and defendant's counsel conducted an extremely thorough cross-examination of all of the Commonwealth's witnesses who were in any way involved with the lineup procedure. For these reasons, I find that the unconstitutional lineup was on this record harmless error.

Second, defendant's counsel failed to object to any of the three separate in-court identifications of defendant by Mathis, all of which occurred prior to any of the challenged lineup testimony. Possibly defendant's counsel would argue that he was waiting for the lineup testimony to make his objections. However, if defendant is making an issue of mistaken identification, he must object to the in-court identifications as well, alleging that they are tainted by the complained of pre-trial confrontation. The efficient and proper administration of justice dictates that this Court not consider issues on appeal which were not raised at trial when the trial court could have corrected the error had it been brought to that court's attention. See *Commonwealth v. Simon*, 432 Pa. 386, 248 A. 2d 289 (1968); *Commonwealth v. Scoleri*, 432 Pa. 571, 582, 248 A. 2d 295, 300 (1968) (concurring opinion).

---

Court shifted the inquiry to whether the untainted evidence provided "overwhelming" support for the conviction. 395 U.S. at 254, 89 S. Ct. at 1728. See 395 U.S. at 255, 89 S. Ct. at 1729 (Mr. Justice BRENNAN dissenting, joined by the Chief Justice and Mr. Justice MARSHALL).