Commonwealth *v.* Minifield, Appellant.

Argued June 13, 1973. Before WRIGHT, P. J., WAT-KINS, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ. (SPAETH, J., absent.)

*Jack J. Levine,* for appellant.

*Linda West Conley,* Assistant District Attorney, with her *James Taylor Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 19, 1973:

Appellant was tried before the Honorable Fred W. DAVIS[1] and a jury and found guilty of sodomy, aggravated robbery and burglary. From the judgments of sentence, this appeal was taken.

Appellant contends that he is entitled to a new trial for the following reasons: (1) the court below erred in not suppressing the victim's line-up and in-court identifications: (2) he was denied a fair trial because he was not provided a transcript of testimony of the preliminary hearing; and (3) he was denied the right to counsel of his choice by the refusal of the court to grant a continuance to retain private counsel.

At noon on October 29, 1971, the victim's apartment located at 4800 Pine Street in Philadelphia was

---

[1] Specially Presiding, 43rd Judicial District.

forcibly entered. The victim who was asleep at the time awoke and saw a Negro male enter her daughter's bedroom. When he saw the victim, he entered her bedroom, laid on top of her, and forced her to remain in a prone position for three to four minutes.

The man then arose, tore some bedsheets and partially blindfolded her.[2] After threatening to kill her with a butcher knife, he forced her to have oral and anal intercourse with him. The man then took two televisions and a wrist watch and left the apartment.

The victim summoned the police who took her to the hospital for examination.[3] Following her release, she gave a description of the assailant to the police. Later, she viewed hundreds of photographs and described him to a police artist who made a composite drawing. The descriptions given may be summarized: negro male, 19 to 25 years old, medium build, pockmarked face, mustache split in the middle, and small scars near the forehead and eyes.

On November 3, 1971, an article in the Philadelphia Evening Bulletin reported the apprehension of two men (one of whom was appellant) suspected of having committed a burglary in the victim's neighborhood. The article included photographs of the two men and detailed their criminal records. After a friend alerted her to the story, the victim identified the photograph of appellant and immediately called the police. Detectives later showed her photographs of ten different Negro men and she selected appellant's photograph.[4]

---

[2] The blindfold did not completely cover the victim's eyes and she was able to see her attacker after being blindfolded.

[3] The examination disclosed the presence of spermatozoa in the victim's rectum.

[4] The photographic display consisted of photographs depicting individuals of the same general appearance. There is no indication whatsoever that the photo display was in any way suggestive.

After attending a line-up consisting of six black males, approximately 19 to 38 years of age, and about the same height and weight, she made a "99%" certain identification of the appellant. Despite rigorous cross-examination at trial, the victim unequivocally identified the appellant as her attacker.

# I

Appellant first argues that the line-up and in-court identifications were irreparably tainted by the initial newspaper photographic identification and accompanying article which detailed appellant's criminal record. Essentially, appellant contends that the publication of his police record and photograph violated the standards set forth in *Commonwealth v. Pierce*, 451 Pa. 190, 303 A. 2d 209 (1973), and that her knowledge of his previous arrest and conviction records tainted all subsequent identifications. While we have grave doubts as to the applicability of *Pierce* to these facts,[5] a review of this record shows that the victim's identification was free of any possible taint created by her knowledge of appellant's criminal record.

The following criteria were established in *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967) to determine the admissibility of identifications which follow an arguably improper identification: (1) the opportunity to observe the criminal act; (2) the discrepancies between a description given to the police and an accused's actual physical appearance; (3) failure to identify on a prior occasion; and (4) the lapse of time

---

[5] The basic concern in *Pierce* was with the possible effect of prejudicial pre-trial publicity as it affects potential jurors who are expected to hear a case without knowledge of the crime. Moreover, the publicity in *Pierce* was highly inflammatory, and detailed some of the Commonwealth's evidence related to the crime for which Pierce was being tried. The article in the instant case did not relate at all to the crime for which appellant was ultimately convicted.

between the criminal act and the subsequent identification. See also *Commonwealth v. Wilson,* 450 Pa. 296, 301 A. 2d 823 (1973); *Commonwealth v. Williams,* 440 Pa. 400, 270 A. 2d 226 (1970).

The victim in the instant case had an excellent opportunity to observe her attacker in a brightly lit bedroom for a period of three to four minutes. Her identification was based primarily upon her observation of appellant's face of which she had a long and close view. See *Commonwealth v. Burton,* 450 Pa. 532 (1973).

Moreover, while we recognize that a witness' prior knowledge of a defendant' criminal record might taint a subsequent identification [see *Commonwealth v. Wilson,* supra], that possibility is significantly lessened in the instant case because the victim did not learn of appellant's record until *after* she identified his photograph and called the police.

The appellant argues that the discrepancies between the height and age description given to the police and appellant's physical features is conclusive evidence of taint. Because the victim was in a prone position throughout the crime, it is understandable that the victim might incorrectly estimate the appellant's height. Furthermore, the victim underestimated appellant's age by ten years, but testimony at the suppression hearing indicated that appellant had the appearance of a much younger man. These two discrepancies are minor compared to the accuracy of the facial description given by the victim. The record affirmatively shows that appellant did have pock marks, a small scar near his eyes, and, at the time of his arrest, a mustache which was not full across the lip, but split at the nose. We feel that these conformities are a strong indication that the identifications made by the victim after she acquired knowledge of appellant's criminal record were based upon observation of her attacker at the time of the incident.

In addition the victim consistently identified appellant in a photographic display,[6] at the line-up, and at trial. The lapse of time between the criminal act and the subsequent identification was relatively short: four days in the case of the photographic identification, and two weeks in the case of the line-up. Under the totality of the circumstances, *Commonwealth v. Williams*, 440 Pa. 400, 270 A. 2d 226 (1970), we believe that the lower court was correct in holding that the victim's identification of the appellant had a basis independent of any bias or suggestiveness induced by her knowledge of appellant's criminal record.

## II

Appellant argues that he was denied a fair trial because he was not provided with a transcript of the notes of testimony from the preliminary hearing. When appellant's case was ready for trial, these notes had not been transcribed. The reporter at the preliminary hearing was no longer employed by the city and could not be located.

We recognize that the preliminary hearing is a critical stage to which the Sixth Amendment right to counsel attaches. *Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999 (1970). We also recognize that the proceedings at this stage may be a valuable tool for trial preparation. We do not believe, however, that the absence of notes of testimony from the preliminary hearing is a per se denial of due process of law requiring a new trial.

---

[6] The photographic identification of the appellant by the victim was suppressed because counsel was not present when it was conducted. See *Commonwealth v. Whiting*, 439 Pa. 205, 266 A. 2d 738 (1970) ; *United States v. Zeiler*, 427 F. 2d 1305 (3d Cir. 1970), overruled in *United States ex rel. Reed v. Anderson*, 461 F. 2d 739 (3d Cir. 1972). Compare *Kirby v. Illinois*, 406 U.S. 682 (1972), with *People v. Hallaway*, 13 Cr. L.R. 2092 (Mich. App., March 27, 1973) and *People v. Anderson*, 13 Cr. L.R. 2092 (Mich. App., March 28, 1973).

(Compare *Roberts v. LaVallee,* 389 U.S. 40, 88 S. Ct. 194 (1967) holding impermissible as a denial of equal protection the denial of preliminary hearing transcript because of inability to pay a fee). "The defendant shall be present at the preliminary hearing . . . and may if he desires . . . make written notes of the proceedings, or have his counsel do so, or have at his own expense, a stenographer present to make a record of the proceedings." Thus, the rules do not require that a defendant be provided with a transcript.

Moreover, the record does not indicate that a request for the transcription of the notes was made at the time of the hearing. Nor did appellant make any effort to subpoena the stenographer prior to the date of trial. Cf. *Norvell v. Illinois,* 373 U.S. 420, 83 S. Ct. 1336 (1963) ; *Commonwealth v. Banks,* 428 Pa. 571, 237 A. 2d 339 (1968) ; *Commonwealth v. Goldsmith,* 452 Pa. 22, 304 A. 2d 478 (1973) (ROBERTS, J., concurring opinion).

It must also be remembered that the transcript in question is that of the preliminary hearing, and not of the trial itself. A trial transcript in most instances is an absolute prerequisite not only to a defendant's ability to prepare an appeal, but also to an appellate court's determination of the existence of error at the trial level. See *Hardy v. United States,* 375 U.S. 277, 84 S. Ct. 424 (1964) ; *Commonwealth v. Anderson,* 441 Pa. 483, 272 A. 2d 877 (1971). Seldom, however, is the presentation of the Commonwealth's case at the preliminary hearing such that the transcript can be said to be a sine qua non to effective trial preparation. Cf. *Britt v. North Carolina,* 404 U.S. 226, 232 (1971) (DOUGLAS, J., dissenting) ; *Commonwealth v. Brown,* 217 Pa. Superior Ct. 190, 192 (1970). Because of the nature of this proceeding, we are "unwilling to say that a full transcript of a [preliminary hearing] is 'invariably needed', however convenient it might be for counsel."

*United States v. Carella,* 411 F. 2d 729, 733 (2d Cir. 1969), cert. den. sub nom. *Erhart v. United States,* 396 U.S. 860, 90 S. Ct. 131 (1969).

## III

Finally, appellant contends that he was denied his Sixth Amendment right to counsel. Appellant does not contend that he was denied the effective assistance of counsel; rather, he argues that he was denied his right to counsel of his choice by the trial judge's refusal to grant him a continuance for the purpose of retaining private counsel.

Appellant had been represented by the Philadelphia Voluntary Defender Association for at least six months prior to trial. On July 6, 1971, appellant was notified that he had received a workmen's compensation award of $1,750.00. On July 26, after appellant's motion to suppress all identifications was denied by the trial judge, the voluntary defender notified the trial judge that appellant wished to terminate his services and retain private counsel. The trial judge ordered that the matter be taken to the calendar judge.

At the hearing before the calendar judge, the following facts were established: the award was not yet final; the notification was dated July 6, yet no attempt to retain counsel or have the case continued was made until the day of trial; appellant wished to retain an attorney who was on vacation until August 16, and whose associate was unwilling to accept the case; and, if the case were continued, witnesses would be unavailable until sometime after September 1. In light of these facts, the Calendar Judge refused the motion.

On the following day, July 27, after four jurors had been selected, appellant again requested a continuance to retain private counsel. The trial judge ordered that the motion be made to the calendar judge after jury

selection was completed. Private counsel appeared before the calendar judge and was willing to enter an appearance immediately, provided that a two-week continuance were granted for trial preparation. This request was denied.

As a general proposition, "where a defendant is able to retain counsel of his choice, he must be given a reasonable opportunity to do so." *United States ex rel. Ferenc v. Brierley,* 320 F. Supp. 406, 408 (E.D. Pa. (1970).[7] We believe that appellant had such an opportunity but failed to pursue it in a reasonable manner. Thus, the action of the calendar judge in refusing the continuance was not in error.

A similar situation was present in *United States ex rel. Carey v. Rundle,* 409 F. 2d 1210 (3d Cir. 1969). On the day of trial, defendant requested a continuance to retain private counsel who was present and agreed to enter an appearance if granted a continuance to prepare for trial. The attorney, however, refused to enter an appearance when the trial judge would only grant a weekend continuance. In reversing the District Court which had held that the defendant was denied his right to retain counsel, the Court stated at p. 1214, 1215: "Desirable as it is that a defendant obtain private counsel of his own choice, the goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice. . . . The conclusion becomes inescapable, therefore, that although the right to counsel is absolute, there is no absolute right to a particular counsel."

In *Ungar v. Sarafite,* 376 U.S. 575, 84 S. Ct. 841 (1964), the defendant requested a continuance to allow newly retained counsel time to prepare the case. Noting

---

[7] See *Commonwealth v. Novak,* 395 Pa. 199, 214, 150 A. 2d 102 (1959) ; "The accused's right to choose counsel must be exercised at a reasonable time and in a reasonable manner."

that the defendant had been allowed five days to retain counsel, the Court held that the refusal to grant a continuance was not a denial of his right to counsel. The Court stated at p. 589: "The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process *even if the party fails to offer evidence or is compelled to defend without counsel.* Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Citations omitted, emphasis added.) We hold that appellant was not denied his Sixth Amendment rights by the calendar judge's refusal to grant a continuance.

The voluntary defender was appointed well in advance of the trial date and had adequate time to prepare a defense.[8] There is no suggestion that counsel was unprepared; to the contrary, counsel stated that he was ready for trial. This was further substantiated by the vigorous manner in which the defense was conducted.

Appellant's request for a continuance was not made until *after* the trial judge refused to suppress the identifications which was twenty days after appellant became aware that he might be able to afford private counsel. Had appellant been so desirous of retaining

---

[8] In this connection we note that time allowed for preparation is an important factor in determining whether Sixth Amendment rights have been protected. *United States ex rel. Mathis v. Rundle,* 394 F. 2d 748 (3d Cir. 1968) ; *United States ex rel. Chambers v. Maroney,* 408 F. 2d 1186 (3d Cir. 1969).

private counsel, we can see no reason for his having waited until the day of trial to effectuate this desire. Indeed, the colloquy between the calendar judge and appellant indicates that appellant's request for a continuance was sought as much for the purpose of avoiding trial before Judge DAVIS as for retaining private counsel.[9] Under all of the circumstances surrounding appellant's request for a continuance, we can find no merit to his contention that he was denied his Sixth Amendment rights.

Judgment of sentence affirmed.

SPAETH, J., took no part in the consideration or decision of this case.

---

[9] "I want to waive the jury, your Honor. I feel as though this judge is prejudiced against me. I feel as though he won't give me a fair trial."