J-S41045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN ZACHARY VOORHIS | : | |
| | : | |
| Appellant | : | No. 341 WDA 2023 |

Appeal from the Judgment of Sentence Entered February 6, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000529-2022

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED: December 27, 2023**

Appellant Jonathan Voorhis appeals *pro-se* from the Judgment of Sentence entered by the Court of Common Pleas of Erie County on February 6, 2023.  After careful review, we affirm.

The relevant facts and procedural history are as follows: On November 9, 2021, Detective Ginkel of the Erie City Police Department charged Appellant with one count of terroristic threats, one count of stalking, one count of simple assault, and three counts of disorderly conduct after a road rage incident in which the victim honked at Appellant and Appellant got out of his car threatening the victim. *See* Information, Criminal Complaint. Appellant was represented by multiple public defenders who were either fired by Appellant or withdrew representation before he filed a Petition to Proceed Pro-Se and

_____

[*] Former Justice specially assigned to the Superior Court.

Waiver of Counsel on October 11, 2022. *See* Motion to Withdraw, 10/11/22. The Commonwealth amended the criminal information on November 16, 2022 to eliminate the first three charges and to reduce the three disorderly conduct counts from misdemeanors to summary offenses, believing only a summary trial to be necessary. Amended Information, Commw. Ex. A. Following a non-jury trial on February 3, 2023, Appellant was convicted of two counts of disorderly conduct[1] and received a 90–180-day sentence, which Appellant had already served. N.T. at 44. This appeal followed.

The issues Appellant raises on appeal as stated in his "Statement of the Questions" section of his brief are reproduced verbatim below:

> 1. Was the Evidence insufficient to support Appellant's Convictions of Disorderly Conduct because the evidence failed to establish beyond a reasonable doubt that
>      A. Appellant Intended to cause public inconvenience, annoyance, alarm or recklessly created a risk there of?
>      B. engaged in fighting, threatening, violent, or tumultuous behavior?
>      C. Created a hazardous or physically offensive condition?
>      D. Actions served no legitimate purpose?
>      E. The evidence was so inherently unreliable it should be deemed insufficient to convict the Appellant beyond a reasonable doubt?
>      The Court Disagreed and found the evidence presented at trial was sufficient to find Appellant guilty beyond a reasonable doubt of Disorderly Conduct.
> 2. Was Appellant denied a fair trial and deprived of Due Process because
>      A. The Honorable Judge Beveridge told Appellant and Appellant's Counsel that the Preliminary Hearing would be recorded by an audio recording device, but it was never turned on even though he said it was?

---

[1] 18 Pa.C.S. § 5503(a)(1); 18 Pa.C.S. § 5503(a)(4).

     B. The Commonwealth in bad faith failed to preserve exculpatory evidence?

     C. The Commonwealth did not provide discovery?

     D. The Commonwealth withheld exculpatory evidence?

     The Court disagreed as they state the Appellant's concise statement was to [sic] vague and the Appellant did not establish materiality.

3. Did the Trial Court err when they denied

     A. Appellant's motion to preserve evidence?

     B. Appellant's motion for compulsary [sic] discovery?

     C. Appellant's motion for violating speedy trial rights?

     D. Appellant's motion for Franks Hearing?

     E. Appellant's motion for reclusal? [sic]

     F. Appellant's motion for Habeas corpus and to Quash Magistrate's transcripts?

     The Court disagreed and stated that these motions were meritless.

4. Did the Trial Court err when they compelled Appellant to testify?

     The Court disagrees and states the Trial Court properly colloquyed the Appellant prior to his testimony at Trial.

5. Were Appellant's State and Federal Constitutional rights violated by

     A. The Prosecutor's knowingly use of false testimony?

     B. The Commonwealth used tampered evidence in bad faith?

     C. The Prosecutorial misconduct?

     The Court disagreed and states that the Appellant was too vague and that the Valerio's video was properly authenticated.

6. Did the Trial Court err by not merging Count 1 with Count 3?

     The Trial Court disagreed quoting the trial transcripts when the Trial Court said the elements of the two crimes are sort of different.

7. Should the criminal case be dismissed as De Minimis?

     The Trial Court disagreed and stated this motion was meritless.

8. Was the Appellant deprived of his rights of effective counsel?

     The Trial Court disagreed and states the Motions Appellant requested to be filed were meritless and that at the trial the Commonwealth provided Appellant with a copy of the criminal complaint as well as the ability to view Valerio's Video.

Appellant's Br. at 5-7.[2]

Initially, we note that Appellant has failed to develop a coherent legal argument in support of parts or all of issues one, two, three, and five in his appellate brief. "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (citation, quotation marks and brackets omitted). While this Court may overlook minor defects or omissions in an appellant's brief, it will not act as his or her appellate counsel. *Bombar v. W. Am. Ins. Co.*, 932 A.2d 78, 93 (Pa. Super. 2007). Sections of Appellant's brief frequently contain short, pasted caselaw phrases with no developed connection to an argument. Appellant's Br. at 32, 40, 62, 64, 68. Appellant's arguments for issue one subparts D and E are not sufficiently developed as they contain, in total, approximately two sentences each in his brief. Appellant's Br. at 21-22. Several times Appellant included partial citations to cases which, upon further research, do not stand for the cited proposition. Appellant's Br. at 31, 37 (citing *Commonwealth v. Charleston*, 94 A.3d 1012 (Pa. Super. 2014)). Issue three contains bald allegations of bad faith and the detective's "reckless disregard for the truth" based on Appellant's version of events, Appellant's Br.

---

[2] We note with extreme displeasure the volume of issues raised on appeal. Appellant raised twenty-two issues after a non-jury summary offense trial that lasted less than an hour. The overwhelming number of issues raised impeded the trial court's preparation of its 1925(a) opinion addressing the issues, which nearly precluded appellate review. *See Kanter v. Epstein*, 866 A.2d 394, 401 (Pa. Super. 2004)

at 39, 45, 46-49, and ramblings about his personal familial hardships. Appellant's Br. at 43-44. Issue five subparts A and C contain bald assertions that the prosecution used tampered evidence and false, perjured testimony. Appellant's Br. at 57-61. In addition to lacking a developed argument relevant to the facts, Appellant's argument is confusing and lacks a sound basis in law. Thus, waiver of these issues is proper in this circumstance since there is "simply no legitimate appellate issue presented." *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 213 (Pa. Super. 2008) (finding waiver of issues when an appellant's five-page 1925(b) statement contained "an incoherent, confusing, redundant, defamatory rant." *Id.*). Appellant's issue one subparts D and E, issue two subparts C and D, issue three, and issue five subparts A and C are thus waived.

Turning to the issues of which we will address the merits, Appellant's first issue is that the evidence was insufficient to convict him of disorderly conduct, arguing there was insufficient evidence to prove (1) he had the intent to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof; (2) engaged in fighting, threatening, violent, or tumultuous behavior; (3) he created a hazardous or physically offensive condition; (4) his actions served no legitimate purpose; and (5) that the evidence was so inherently unreliable it should be deemed insufficient to convict him beyond a reasonable doubt. Appellant's Br. at 5.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence

to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted). The disorderly conduct statute provides as follows:

(a) Offense defined. — A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
    (1) engages in fighting or threatening, or in violent or tumultuous behavior;
    . . . or
    (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a).

In support of his argument that his actions did not cause public inconvenience, annoyance, or alarm, he states that neither the victim nor anyone else was deterred from continuing to drive their intended route, and that the victim herself was the only person to call 911. Appellant's Br. at 16. Relevant to our analysis, "public" is defined in the statute as "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included . . . transport facilities . . . or any premises

- 6 -

which are open to the public." 18 Pa.C.S. § 5503(c). The Pennsylvania Supreme Court has explained that the statute does not require that an offender's conduct

> be directed at a certain number of persons that could qualify as "the public." Therefore, when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, *even when that conduct is directed at only one other person*, the offender may be subject to conviction for disorderly conduct.

**Commonwealth v. Fedorek**, 946 A.2d 93, 100 (Pa. 2008) (citation omitted) (emphasis added). Further, we note that "intent is a subjective frame of mind, [and] can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." **Commonwealth v. Bullock**, 170 A.3d 1109, 1119 (Pa. Super. 2017) (citations and some quotation marks omitted).

Here, the victim testified that Appellant stopped his vehicle in the middle of the road at a green light and got out of his car, and that his approach and following behavior caused alarm, and the trial court found this testimony credible. Tr. Ct. Op. at 6-7. We will not reweigh the credibility of any witness or evidence, and we find that Appellant getting out of his car in the middle of a public road would reasonably imply intent to "cause public inconvenience, annoyance or alarm, or recklessly create[e] a risk thereof[.]" See 18 Pa.C.S. § 5503(a)(1).

In support of Appellant's argument that Appellant did not engage in fighting, threatening, violent, or tumultuous behavior, he states that "it is unreasonable for a fact-finder to expect the Appellant who at the time weighed

270 pounds and was of an athletic build intended, expected, or risked engaging in fisticuffs with a woman weighing 150 pounds[.]" Appellant's Br. at 17. Additionally, he states that he never voiced any threat. *Id*. The trial court found credible the victim's testimony that Appellant said he would "fuck [her] up" and that he was going to kill her. Tr. Ct. Op. at 7. The trial court as factfinder was free to believe the testimony that Appellant verbally threatened the victim, satisfying this element of the statute.

In support of his argument that Appellant did not create a hazardous or physically offensive condition, he asserts that because his conduct does not meet 75 Pa.C.S. § 3364 – Impeding Traffic, or 18 Pa.C.S. § 5507 – Obstructing Public Highways, that traffic movement was reasonable and thus there was no risk of hazard. Appellant's Br. at 19. He also cites caselaw suggesting that words alone cannot constitute assault. *Id.* at 20. However, he was not charged under those sections or with assault so it is irrelevant whether or not his conduct satisfies the elements of those crimes. Since he makes no further argument, this issue fails.

Subpart A of Appellant's second issue is that Appellant was denied due process because no preliminary hearing transcripts are available. Appellant's Br. at 29. The preliminary hearing was held on March 3, 2022 before Magisterial District Judge Beveridge at which Appellant was represented by counsel from the Erie County Public Defender's Office. However, the testimony at that hearing was not preserved and no recording or transcript exists.

Appellant cites **Commonwealth v. Dean**, 501 A.2d 269 (Pa. Super. 1985), for the proposition that the production of a transcript of the testimony of a preliminary hearing is mandatory, and that its absence deprives the defendant of counsel's ability to effectively cross-examine the Commonwealth's witnesses. Appellant's Br. at 29. Appellant's reliance on **Dean** is misplaced; the holding in **Dean** is limited to the proposition that, upon request, an indigent defendant is entitled to a preliminary hearing transcript at the Commonwealth's expense. **Dean** at 270. The **Dean** Court made no pronouncement that preliminary hearings must always be reduced to a verbatim record; the Court specifically rejected the notion that its holding supports the contention Appellant attempted to advance:

> It is not inconsistent to hold that the absence of a preliminary hearing transcript does not necessarily deprive a defendant of a fair trial or due process of law and to also recognize that unequal access to such a transcript, depending on a defendant's economic ability to buy it, is a violation of the Equal Protection Clause.

**Dean**, 501 A.2d at 271.

Here, there was no disparate treatment of the defendant due to his indigence, or indeed, for any other reason. Rather, the lack of a verbatim record of the preliminary hearing was presumably due to a technical malfunction. The lack of a preliminary hearing transcript by itself has not been held by our courts to be a denial of due process of law. On the contrary, it has long been the rule that there is no per se requirement that preliminary hearings be transcribed verbatim. **See Commonwealth v. Minifield**, 310 A.2d 366 (Pa. Super. 1973). In this case, both the Commonwealth and the

defense were necessarily limited to whatever notes they may have made contemporaneously with the preliminary hearing. There is no suggestion that the defense was in any way less able to avail itself of means to memorialize the testimony at the preliminary hearing than was the Commonwealth.

In addition, and more importantly, Appellant has not established that he was prejudiced by the lack of a preliminary hearing transcript. Appellant was not unable to cross-examine Commonwealth witnesses as to prior inconsistent statements. The record reveals that during Appellant's cross-examination of the victim during trial, Appellant was able to raise inconsistencies between the victim's testimony at the preliminary hearing and the testimony at trial. N.T. at 15, 19, 21. During Detective Ginkel's cross-examination, Appellant had the opportunity to ask questions about his perceived inconsistencies between what the video evidence showed and the victim's testimony. N.T. at 32, 33. Thus, Appellant's due process rights were not violated.

Subpart B of Appellant's second issue is that Appellant was denied due process and a fair trial because of the Commonwealth's failure to preserve exculpatory evidence. Appellant's Br. at 32. Specifically, Appellant asserts that a recording of the 911 call from the victim and a recording of the interview between the detective and the victim would have proved the victim was misrepresenting facts at trial and thus, the Commonwealth violated the principles of ***Brady v. Maryland***, 373 U.S. 83, (1963), by failing to produce those recordings. Appellant's Br. at 32, 34. Appellant reinterests in his reply

brief that the failure to provide the 911 call and witness interview is inexcusable because he specifically requested it. Appellant's Reply Br. at 2.

In **Brady**, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, 373 U.S. at 87. In order to establish that the Commonwealth committed a Brady violation, the defense must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. **Commonwealth v. Antidormi**, A.3d 736, 747 (Pa. Super. 2014) (citing **Commonwealth v. Haskins**, 60 A.3d 538, 545 (Pa. Super. 2012)).

Here, it is undisputed that the Commonwealth did not produce a recording of the 911 call or the police interview. Appellant contends that evidence from the interview between the detective and victim was favorable and material to his defense, as it "would have been a treasure trove of exculpatory evidence no longer available because of the bad faith committed by the Commonwealth." Appellant's Br. at 35. Despite Appellant's assertions, however, we are unable to make a determination of the favorability or materiality of the evidence since the contents of the 911 call and interview were never preserved.

In these instances, where the evidence was never viewed by the defense and therefore only potentially useful, **Brady** does not govern our determination of whether or not a due process violation occurred. Instead, evidence that is only potentially useful constitutes a separate category of evidence to which a defendant has constitutionally guaranteed access under the Due Process Clause of the Fourteenth Amendment. **Commonwealth v. Chamberlain**, 30 A.3d 381, 402 (Pa. 2011). In these cases, a determination of whether a due process violation has occurred is governed by **Arizona v. Youngblood**, 488 U.S. 51, (1988). **Commonwealth v. Feese**, 79 A.3d 1101, 1109 (Pa. Super. 2013).

In **Youngblood**, the defendant was convicted of child molestation, sexual assault, and kidnaping. **Youngblood**, 488 U.S. at 52. The police improperly preserved the blood, saliva, and semen samples that were collected from the victim and his clothing. **Id.** at 52-54. Thus, the samples, when subjected to testing, provided inconclusive results. **Id.** at 54-55. After being convicted based on the victim's identification of the defendant as the perpetrator, the defendant filed an appeal to the United States Supreme Court, asking the high court to determine whether the omission of evidence that was destroyed by the state, which had the potential to exonerate him, deprived the defendant of a fair trial. The **Youngblood** Court held:

> The Due Process Clause of the Fourteenth Amendment, as interpreted in **Brady**, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of

the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.

*Id.* at 57. Thus, the Supreme Court concluded that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58.

In this case, Appellant failed to present any evidence or argument relevant to **Youngblood** to establish that the Commonwealth acted in bad faith. Instead, Appellant focused his argument that the Commonwealth's failure to produce the 911 call or police interview establishes a **Brady** violation. As **Brady** is not the proper inquiry in this instance, we conclude that Appellant has not preserved the proper argument for appeal, and his claim is accordingly waived. **See Commonwealth v. Rush**, 959 A.2d 945, 949 (Pa. Super. 2008) ("[F]or any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Appellant's fourth claim is that his rights were violated when the court compelled him to testify. The trial court's discussion of this issue in its 1925(a) opinion sufficiently states:

Appellant avers the trial Court compelled him to testify at trial. This claim is belied by the record. The Court spoke with Appellant prior to his testimony:

The Court: OK. Mr. Voorhis, this is your opportunity to testify if you wish. It's entirely up to you. In any type of criminal case, the defendant has a right not to testify, and *no negative inference* can be drawn from that, but it's up to you what you want to do.
Mr. Voorhis: I would like to testify.
The Court: You want to?
Mr. Voorhis: Yes.
Trial Tr. 35.

Thus, the Court properly colloquyed Appellant prior to his testifying at trial. Appellant, therefore, was not compelled to testify against his wishes.

Tr. Ct. Op. at 6 (italic emphasis added). Accordingly, we find no error by the trial court in this regard.

Subpart B of Appellant's fifth issue claims that the Commonwealth used tampered evidence in bad faith. Appellant's Br. at 60. Specifically, Appellant argues that the video footage of the incident that was played at trial was not a download of the original footage but instead a duplicate recording.[3] *Id.* at 60-61. Our review of the record reveals that Appellant failed to object when the foundation was laid for the introduction of the video or when the trial court judge admitted the video into evidence. N.T. at 24-25. It is well settled that a "[f]ailure to raise a contemporaneous objection to the evidence at trial waives

---

[3] To the extent Appellant argues the duplicate video violates Pennsylvania's best evidence rule, his interpretation of the rule is incorrect. While testimony to prove content is inadmissible if neither an original nor a duplicate is introduced, "[a] duplicate is admissible[,] to the same extent as the original[,] unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Pa.R.E. 1003. Here, the video which was a duplicate recording was properly authenticated. N.T. at 24-25. The comment to the rule also notes that since the best evidence rule was enacted, "[t]he extension [of admitting] all accurate copies seems justified in light of modern practice" where copies are "made by techniques that are more likely to produce accurate copies." Pa.R.E. 1003 cmt.

that claim on appeal." **Commonwealth v. Thoeun Tha**, 64 A.3d 704, 713 (Pa. Super. 2013) (citations omitted); **see also** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Therefore, this issue is waived.

Appellant's sixth claim is that the trial court erred by not merging counts one and three. Appellant's Br. at 64. Specifically, he argues that because the crimes are nearly identical, the sentences should have merged or been run concurrently. We disagree.

Appellant's merger claim implicates the legality of sentence and thus our standard of review is de novo and the scope of review is plenary. **See Commonwealth v. Collins**, 764 A.2d 1056, 1057 n.1 (Pa. 2001).

Section 9765 of the Sentencing Code provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. Merger, therefore, is appropriate only when two distinct criteria are satisfied: (1) the crimes arise from a single criminal act; and (2) all of the statutory elements of one of the offenses are included within the statutory elements of the other. "[T]he plain language of Section 9765 precludes courts from merging sentences when each offense contains a statutory element that the other does not." **Commonwealth v. Raven**, 97 A.3d 1244, 1250 (Pa. Super. 2014). This rule applies irrespective of whether the offenses are codified in different statutes or in different subsections of the

same statute. **See id.** at 1251-52 (different statutes); **Commonwealth v. Rhoades**, 8 A.3d 912, 918 (Pa. Super. 2010) (different subsections of the same statute).

Appellant was found guilty of two counts of disorderly conduct under two different subsections of the statute: 18 Pa.C.S. § 5503(a)(1) and 18 Pa.C.S. § 5503(a)(4). The statute provides:

> (a) Offense defined. — A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
> > (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> > . . . or
> > (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a).

Each of these subsections contains an element that the other does not. Subsection 5503(a)(1) requires proof that the defendant engaged in fighting or threatening behavior. Subsection 5503(a)(4) requires proof that the defendant created a hazardous condition that serves no legitimate reason. Given these disparate elements, the Commonwealth can prove a violation of one subsection without proving a violation of the other. Accordingly, the trial court did not err in refusing to merge Appellant's Subsection 5503(a)(1) violation with his Subsection 5503(a)(4) violation. **See Raven, supra** and **Rhoades, supra.**

Appellant's seventh issue is that his criminal case should be dismissed as *de minimis* because no harm was caused by his actions. Appellant's Br. at

66. Section 312 of the Crimes Code states that the court shall dismiss the prosecution if it finds the defendant's conduct:

> (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S. § 312(a). We review the refusal to dismiss under Section 312 for abuse of discretion. **Commonwealth v. Lutes**, 793 A.2d 949, 963 (Pa. Super. 2002).

This issue is also meritless. "An offense alleged to be de minimis in nature should not be dismissed where either harm to the victim or society in fact occurs." **Id.; accord Commonwealth v. Toomer**, 159 A.3d 956, 960 (Pa. Super. 2017). In other words, the court does not abuse its discretion in refusing to dismiss the charges where the conduct of the offender actually caused public alarm, annoyance, or inconvenience. **Lutes**, 793 A.2d at 963. Here, the trial court states in its 1925(a) opinion that it did find Appellant's conduct constituted fighting, threatening, violent, or tumultuous behavior, *and* that it created a hazardous or physically offensive condition. Tr. Ct. Op. at 7. The court found credible the victim's testimony that the incident was "very, very scary," "nerve-racking," and has affected her since. Appellant's conduct caused the type of harm sought to be prevented by the statue defining

the offense, and thus the court did not abuse its discretion in failing to dismiss the case as *de minims.*

Appellant's eighth issue is that he was deprived of his right to effective assistance. Appellant's Br. at 68. The Commonwealth argues that Appellant may not raise ineffectiveness claims on direct appeal but must instead raise them in a PCRA petition. Appellee's Br. at 6 (citing **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002)). In **Grant**, our Supreme Court held that, as a general rule, defendants must defer ineffective assistance of counsel claims to collateral review. In **Commonwealth v. O'Berg**, 880 A.2d 597 (Pa. 2005), the Court declined to recognize a categorical exception to **Grant's** general deferral rule, which would have permitted defendants with short sentences of incarceration, who would likely be ineligible for PCRA review as they would no longer be in custody, to present ineffectiveness claims on direct appeal. However, in specific limited circumstances, a defendant may raise ineffectiveness claims in post-sentence motions and on direct appeal. **See, Commonwealth v. Holmes**, 79 A.3d 562, 563-64 (Pa. 2013). The **Holmes** case softened Grant's steadfast rule:

> "unitary review offers defendants who receive shorter prison sentences or probationary sentences the prospect of litigating their constitutional claims sounding in trial counsel ineffectiveness; for many of these defendants, post-appeal PCRA review may prove unavailable." [**Holmes**, 79 A.3d] at 578. Considering that the United States Supreme Court had recently emphasized "the constitutional primacy of claims involving the ineffectiveness of trial counsel," **id.** (citing **e.g., Martinez v. Ryan**, 566 U.S. 1, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) and **Trevino v. Thaler**, 569 U.S. 413, 133 S. Ct. 1911, 185 L. Ed. 2d

1044 (2013)), the **Holmes** Court found unitary review in short sentence cases to be valuable. **Id**. Accordingly, we directed trial courts to "err on the side of favoring the vindication of constitutional rights otherwise susceptible to forfeiture," and conveyed confidence that trial courts in short sentence cases will recognize these concerns and liberally permit unitary review. **Holmes**, 79 A.3d at 578.

**Commonwealth v. Delgros**, 183 A.3d 352, 361 (Pa. 2018).

Because Appellant received a short sentence and was given credit for time served, in the interest of justice we will briefly analyze if this case is one of the limited circumstances in which the claim should be heard on direct appeal. Here, Appellant's sentence was 45-90 days on each count, for a total of 90-180 days. Sentencing Order, 2/6/22. Appellant has served this time. N.T. at 44. However, in order to be eligible for PCRA relief, the statute provides that at the time relief is granted, petitioner must be "currently serving a sentence of imprisonment, probation or parole for the crime." 42 Pa.C.S. § 9543(a)(1)(i). Appellant will never be eligible for PCRA relief, and thus we will "err on the side of favoring vindication of constitutional rights" and address the merits.

Appellant's ineffective assistance issue specifically avers that the Public Defender's Office refused to file various motions prior to him deciding to represent himself. Appellant's Br. at 68. He argues that the motions had merit and would have brought relief. **Id**.

> As the starting point for our review of any ineffectiveness claim, we presume that counsel is effective. **Commonwealth v. Cross**, 535 Pa. 38, 634 A.2d 173 (Pa. 1993). In order to overcome this presumption and establish that counsel was indeed ineffective, an appellant must establish three points. First, Appellant must show

that the underlying claim is of arguable merit. ***Commonwealth v. Travaglia***, 541 Pa. 108, 661 A.2d 352, 356 (Pa. 1995). Second, Appellant must prove that counsel's action or inaction was not grounded on any reasonable basis. ***Id***. In determining whether counsel's action was reasonable, we do not question whether there were other more reasonable courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975 (Pa. 1987). Finally, Appellant must establish that "but for the act or omission in question, the outcome of the proceedings would have been different." ***Travaglia***, 661 A.2d at 357. "If it is clear that Appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." ***Id***. We also note that an "appellant cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims." ***Commonwealth v. Beasley***, 544 Pa. 554, 678 A.2d 773, 778 (Pa. 1996).

***Commonwealth v. Porter***, 728 A.2d 890, 895-96 (Pa. 1999).

Here, the inaction of Appellant's public defenders in failing to file various motions was justified because the motions were meritless. The trial court states,

Appellant was assigned a Public Defender on April 1, 2022. On October 11, 2022, Appellant filed a Petition to Proceed Pro-Se and Waiver of Counsel. The Public Defender then filed a Motion to Withdraw, which was granted following a hearing on October 19, 2022. The Public Defender was appointed stand-by counsel. Between April 1, 2022, and October 11, 2022, while represented by the Public Defender, Appellant filed voluminous requests directed to his counsel. On October 24, 2022, after Appellant was proceeding pro-se, the Court ordered the Commonwealth to file a response to Appellant's Motions (including those requests filed while the Appellant was represented by the Public Defender.) In its October 26, 2022, response, the Commonwealth stated that Appellant's Motions were meritless. Additionally, in an effort to expedite this matter, the Commonwealth stated that a Motion to

Amend Criminal Charges to proceed to a summary trial would be filed. The Court denied Appellant's Motions as meritless on October 26, 2022. Thus, the Public Defender did not err in failing to file meritless motions.

Tr. Ct. Op. at 1-2. The trial court further found that all of the correspondences sent to the court from the DOC were meritless motions. Because the trial court found that the motions were meritless, Appellant cannot satisfy the arguable merit prong. We also note that ineffective assistance of counsel claims are not self-proving, and Appellant cannot prevail on undeveloped claims consisting of boilerplate allegations. *See Commonwealth v. Pierce*, 786 A.2d 203, 221 (Pa. 2001) (petitioner cannot prevail on an ineffective assistance claim absent an "analysis of the record or specific allegations of how [counsel's] failure . . . prejudiced him."); *see also Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (stating that "[a] PCRA petitioner must address each of the [ineffective assistance of counsel] prongs on appeal"). Indeed, in Appellant's brief, he devotes almost his entire argument to directing the Court to his arguments for merit, save for the first paragraph where he baldly asserts the motions would have brought relief. Appellant's Br. at 68-70; *see also Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011) (providing that "boilerplate allegations and bald assertions ... cannot satisfy a petitioner's burden to prove that counsel was ineffective."); *Wholaver, supra*. Accordingly, Appellant has failed to establish his claim of ineffective assistance of counsel.

Judgment of Sentence Affirmed.

President Judge Panella joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

12/27/2023